**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**TSAI Pro LTD. and TSAI Capital Foundation (a/k/a TSAI Exchange Ltd.),**<br><br>**Defendants.** | **COMPLAINT**<br><br>**Case No. 1:26-cv-08518**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("SEC"), for its Complaint against Defendants TSAI Pro Ltd. ("TSAI Pro") and TSAI Capital Foundation (a/k/a TSAI Exchange Ltd.) ("TSAI Capital") (collectively, TSAI or "Defendants") alleges as follows:

## SUMMARY

1. This case concerns a fraudulent scheme involving a fake investment platform and fake trading bots operated by Defendants via their website with the address techstarvoip.com.

2. From September 2024 to March 2025 (the "Relevant Period"), Defendants represented to investors—through, for example, their website, WhatsApp group chats, and Facebook posts—that investors could earn guaranteed profits by, among other things, depositing funds on Defendants' online platform (the "TSAI Platform") for the purported purpose of "renting" bots programmed by Defendants with artificial intelligence to trade on investors' behalf (the "AI Trading Bot Program" or the "Program"). Defendants told investors that they could earn income by recruiting others to invest in Defendants' AI Trading Bot Program, which they offered and sold as an investment contract. Defendants also represented that TSAI—which offered and sold the Program to investors—was "fully regulated" by the SEC and was thereby

"legal and safe," and posted a certificate purportedly issued by the SEC on their website as proof.

3. But nothing about the TSAI Platform or the Program was real, legal, or safe: there were no AI trading bots and deposited funds were never used to earn returns for investors. The purported profits and income reflected in investors' accounts on the TSAI Platform were fake. In reality, neither Defendants nor the Program was "fully regulated" by the SEC, and the supposed SEC certificate that Defendants posted was fake.

4. Through Defendants' fraudulent scheme, they misappropriated at least $2.8 million from approximately 1,715 retail investors.

## VIOLATIONS

5. By the conduct alleged in this Complaint, TSAI Pro and TSAI Capital violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5]. Defendants also violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

6. Unless Defendants are restrained or enjoined, they will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions and courses of business of similar type and object in the future.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7. The SEC brings this action under the authority conferred by Securities Act Section 20(b) [15 U.S.C. § 77t(b)] and Exchange Act Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27(a) [15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa(a)]. The SEC seeks a final judgment: (a) permanently enjoining TSAI Pro and TSAI Capital from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77(c), and 77q(a)], Section 10(b) of

the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [and 17 C.F.R. § 240.10b-5]; (b) ordering TSAI Pro and TSAI Capital to disgorge all ill-gotten gains from their violations alleged in this Complaint, and order them to pay prejudgment interest on their ill-gotten gains, under Sections 21(d)(3), (d)(5) and (d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (c) ordering TSAI Pro and TSAI Capital to each pay a civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; (d) imposing a conduct-based injunction that permanently restrains and enjoins each Defendant from directly or indirectly, including, but not limited to, through any entity owned or controlled by such Defendant, participating in the issuance, purchase, offer, or sale of any security pursuant to Section 20(b) of the Securities Act and Sections 21(d)(1) and (d)(5) of the Exchange Act; and (e) ordering any other relief the Court may deem just and proper.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this action under Securities Act Sections 20(b), 20(d)(1) and 22(a) [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)] and Exchange Act Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) [15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e), and 78aa(a)].

9. Defendants TSAI Pro and TSAI Capital, directly and indirectly, have made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

10. Venue in this District is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)] because during the Relevant Period Defendant TSAI Pro claimed that it transacted business in the Southern District

of New York and claimed to maintain its headquarters in this District. In addition, certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District.

## DEFENDANTS

11. **TSAI Pro Ltd.** is a New York corporation that lists its principal place of business at 250 Greenwich Street, New York, New York 10007. On September 23, 2024, TSAI Pro filed a Notice of Exempt Offering of Securities on Form D ("Form D") with the SEC claiming revenue of over $100 million and purportedly seeking to raise up to $10 million and claiming an exemption from registration pursuant to Rule 506(c) of Regulation D of the Securities Act. The techstarvoip.com website contained an "SEC" link which took the user to a certificate purportedly issued by the SEC to TSAI Pro, which referenced TSAI Pro's Form D filed with the SEC.

12. **TSAI Capital Foundation** is a Colorado corporation purportedly headquartered in Denver, Colorado with its principal place of business at 1750 Wewatta Street, Denver, Colorado 80202. According to the techstarvoip.com website, the TSAI Platform was operated by TSAI Exchange, Ltd. which the website represented operated in the U.S. under the name TSAI Capital Foundation. TSAI Capital was registered as a Money Services Business ("MSB") with the U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") on August 5, 2024.

## FACTS

### A. Defendants Created an Infrastructure to Entice Potential Investors to Invest in the Program

13. Defendants created an infrastructure to entice investors to invest in the AI Trading Bot Program.

14. Defendants did this by creating a fraudulent website and the TSAI Platform, filing the Form D containing false information, and creating social media channels and group chats to communicate with investors.

**1. Defendants Created the TSAI Website and TSAI Platform Where Investors Would Deposit Their Funds for the Program**

15. In or around August 2024, Defendants created the techstarvoip.com website (the "TSAI Website").

16. According to the TSAI Website, the TSAI Platform was operated by TSAI Exchange, Ltd., which was "registered in United States under the name TSAI CAPITAL FOUNDATION."

17. The TSAI Website contained an "SEC" link which took the user to a certificate purportedly issued by the SEC to TSAI Pro. The certificate referenced TSAI Pro's Form D filed with the SEC.

18. Upon information and belief, the same individuals who created TSAI Pro created TSAI Capital.

19. Upon information and belief, the same individuals who formed the Defendant entities created the TSAI Website and created the TSAI Platform.

20. Upon information and belief, at all times during the Relevant Period, these individuals controlled and operated the Defendants, the TSAI Website, and the TSAI Platform.

21. Through the website, Defendants promised investors high fixed returns if they "rented" AI trading bots for a specified period of time.

22. In the "About Us" portion of its website, Defendants represented that the "market trading intelligent robot" was the result of years of research and development. Specifically, the website represented the following:

> After years of research and development and testing, TSAI has launched the most stable market trading intelligent robot. AI uses big data for analysis, deep learning technology to process market data, identify trading opportunities, execute transactions and manage risks; large-scale AI data enables quantitative trading in the stock market and is applied to the futures market, foreign exchange market and crypto market.

23. Defendants represented that an entry-level AI trading bot had a rental fee of $100, and that the bot would execute trades on behalf of the investor over two days and, at the end of the trading period, would pay the investor a total of $20 ($10 per day) and return the $100 bot rental fee to the investor.

24. Defendants offered additional AI trading bots with varied rental fees. The most expensive bot rental fee was $500,000, which purported to pay $17,500 per day for 360 days, for a total of $6.3 million.

25. Through the website, and coupled with the social media channels described below, Defendants encouraged investors to deposit their funds on the TSAI Platform for the purpose of "renting" the Program's trading bots for a specified period of time, which supposedly would generate guaranteed profits for the investors.

26. Through Defendants' TSAI Platform, investors selected which AI trading bot of the Program to rent by depositing crypto assets such as BTC, ETH, USDT, and USDC into a TSAI crypto wallet address that Defendants designated for each investor.

27. In addition to promising guaranteed profits from its AI trading bots, TSAI told investors in promotional materials that they could earn commissions by recruiting others to invest in its AI Trading Bot Program.

28. The TSAI Website displayed for each investor, the value of the deposits, purported profits earned from any bots rented, and other purported accumulated returns and/or commissions.

**2. TSAI Pro Publicly Filed a Form D, TSAI Capital Registered as an MSB, and Defendants Posted an "SEC Certificate" to The TSAI Website to Give Investors a False Appearance of Legitimacy**

29. On September 23, 2024, TSAI Pro filed a Form D with the SEC disclosing a purported exempt "indefinite" offering of at least $10,000,000 that included equity, options/warrants, pooled investment fund interests and requiring a $1,000 minimum investment to participate in the offering. The form indicated that a Rule 506(c) exemption applied to the offering.

30. In the Form D, TSAI Pro claimed it had the highest "Revenue Range" listed on the form of "Over $100,000,000."

31. The TSAI Website gave the appearance that TSAI—and by extension, the TSAI Platform—was regulated by both the SEC and FinCEN.

32. The TSAI website linked to the below "certificate" purportedly issued by the SEC to TSAI Pro that referenced the filed Form D.



U.S. SECURITIES AND EXCHANGE COMMISSION

TSAI PRO LTD.

CIK: 0002038447

Business Address: 250 GREENWICH ST, NEW YORK, NY, 10007

EIN: 99-4984428 | State of Inc.: NY | Fiscal Year End: 09/30

Type: D | Act:33 | File No.:021-524696 | Film No.:241316004

Under the federal securities laws, any offer or sale of a security must either be registered with the SEC or meet an exemption.Even if a company takes advantage of an exemption from registration, a company should take care to provide sufficient information to investors to avoid violating the antifraud provisions of the securities laws. This means that any information a company provides to investors must be free from false or misleading statements. Similarly, a company should not exclude any information if the omission makes what is provided to investors false or misleading.

Effectiveness Date: Sep 23, 2024

33. Defendants registered TSAI Capital as an MSB with FinCEN on August 5, 2024. The techstarvoip.com website posted, "Is TSAI legal and safe?" and answered, "TSAI has

United States [] MSB (Money Services Business) licenses . . . and more than 30 countries around the world and regional licenses and operating permits[.]"

34. Upon information and belief, the same individuals who created the Defendant entities filed TSAI Pro's Form D, registered TSAI Capital as an MSB, and posted the purported SEC certificate to the TSAI Website.

**3. Defendants Created WhatsApp Chats and Social Media Accounts to Further Entice Investors to Invest in the AI Trading Bot Program**

35. Defendants posted information to public TSAI Facebook and WhatsApp group chats to lure potential investors to invest in the AI Trading Bot Program.

36. Upon information and belief, persons associated with and employed by Defendants communicated with investors through these chats ("TSAI Administrators").

37. Upon information and belief, at all times during the Relevant Period, the same individuals who controlled Defendants, the TSAI Website, and the TSAI Platform also controlled and managed the public TSAI Facebook group and WhatsApp group chats.

38. In an October 24, 2024, WhatsApp chat, a TSAI Administrator posted an image that explained that "TSAI's intelligent AI robot combines quantitative trading, high-frequency trading and natural language processing technologies to deeply analyze market dynamics in multiple dimensions and quickly identify trading opportunities." The post further explained that the AI trading bots "have continuous learning and optimization capabilities, which can quickly adapt to market changes, thereby improving long-term revenue and helping users stay ahead in a highly competitive market."

39. On February 13, 2025, a TSAI Administrator on Facebook posted on the "Tsai Public group" and represented that the AI Trading Bot Program "uses machine learning to record market data and uses artificial intelligence to combine it with the global trading market to create

value for every user. It is a platform that provides AI intelligent trading services around the world. The platform has prioritized data analysis and processing of the total trading volume, historical prices, financial statements, market news, etc. over the past decades."

40. Through another post in the Facebook group by a TSAI Administrator dated February 14, 2025, Defendants represented that the bots would engage in "crypto trading." "In Facebook posts around the same time by the same TSAI Administrator, Defendants represented that the bots would engage in "shock trading" or "stock trading."

41. In a February 28, 2025, WhatsApp chat post, Defendants posted an image that announced, "Our latest development at TSAI, the quantitative trading robot, uses advanced algorithm and data analysis techniques to help you seize market opportunities and achieve wealth growth."

**B. Defendants' TSAI Platform and the AI Trading Bot Program Were Shams**

**1. The AI Trading Bot Program Was Not Real**

42. The funds that investors sent to the TSAI Platform for the purpose of renting bots that were part of the AI Trading Bot Program were never used to earn returns for investors. No trading of crypto assets, stock, or anything else on behalf of investors actually took place.

43. While Defendants posted purported trading profits in investors' TSAI Platform accounts, there were no AI trading bots. There were no real accounts. There was no Program.

44. Any purported profits reflected in investors' accounts on the TSAI Platform were fake.

**2. Defendants Were Not Certified by the SEC**

45. Defendants posted a fake SEC certificate to the TSAI Website that referenced the Form D TSAI Pro had filed with the SEC for the purpose of assuring investors that the AI Trading Bot Program was a safe investment.

46. The Form D TSAI Pro filed with the SEC listed a "Benjamin Douglas Cook" as the purported director of TSAI Pro, but no individual with that name is actually affiliated with TSAI Pro.

47. In addition, on its Form D and in its New York State corporate filings, TSAI Pro listed its address as 250 Greenwich Street, New York, but did not list a suite number or floor number where it could be located in this approximately 52-story building. The SEC could not locate a business named TSAI Pro at 250 Greenwich Street.

48. The Form ID that TSAI Pro filed with the SEC to obtain SEC database filing access for the purpose of filing the Form D contained a fraudulent notary stamp.

49. Finally, the "certificate" was not issued by the SEC and instead was a false and fraudulent document created by Defendants.

### C. Defendants Represented That They Actively Managed the TSAI Platform and the AI Trading Bot Program

50. Defendants represented to investors that they were continuing to develop, support, and troubleshoot the TSAI Platform and its AI Trading Bot Program.

51. Through postings on WhatsApp and on the TSAI Website, Defendants periodically announced that they had developed new trading bots that were supposedly better than earlier versions. For example, in a December 12, 2024, WhatsApp chat, a TSAI Administrator posted a flyer that said, "The E series robot is officially launched! The E series robot is the second robot specially developed by TSAI for the cryptocurrency market. It is constantly updated, collected, and adjusted based on the current cryptocurrency conditions to reduce risks and maintain s[t]able returns."

52. In a January 9, 2025, WhatsApp chat, a TSAI Administrator posted an image that announced, "Our TSAI has recently developed the latest quantitative trading robot (Q series),

which uses advanced algorithms and data analysis technology to help you capture market opportunities and realize wealth appreciation."

53. In another example, in a February 5, 2025, "TSAI Senior Partner Discussion Group 22" WhatsApp chat, Defendants posted an image titled "TSAI ARTIFICIAL INTELLIGENCE TRADING TECHNOLOGY IMPROVES GLOBAL EMPLOYMENT ISSUES!" announcing the "upcoming launch of our latest high yield (L Series) intelligent robot, developed through continuous data collection and adjustments," which was able to "utilize[e] advanced artificial intelligence technology to analyze markets dynamics in real time" for the purpose of "generat[ing] stable returns."

54. Similarly, in a March 10, 2025, "TSAI Team" WhatsApp chat, digital images were posted announcing the launch of a new "Limited Release!" of the "latest" bots that utilize more advanced technology and "revolutionary improvements."

55. Defendants also made statements conveying that they were actively managing the Program.

56. For example, through a pop-up on the TSAI Website, Defendants told investors that the success of the AI Trading Bot Program was "not only the result of our hard work" but also that Defendants would "work hand in hand with all of you, as we write new chapters together in this field!"

57. Defendants also indicated that they were monitoring and managing the TSAI Platform.

58. For example, around March 17, 2025, one TSAI Administrator who identified himself as a "manager" in a TSAI WhatsApp chat informed investors, "The finance department's withdrawal review process has been slower than expected, and TSAI has taken notice of this.

Therefore, we have mobilized a new finance team!"

### D. Defendants Took Further Fraudulent Steps to Obtain Additional Investor Funds

#### 1. Defendants Engaged in a Pyramid Scheme

59. Defendants established a multi-level marketing project to purportedly enable investors to earn money by recruiting others to send funds to the TSAI Platform and rent AI trading bots. For example, through WhatsApp chats, Defendants told investors that they could earn commissions by recruiting others to invest in their AI Trading Bot Program.

60. Through an October 24, 2024, "Tsai Team" WhatsApp chat, Defendants posted images of what the TSAI Administrator called "introductory materials" representing to investors that if they were able to recruit other investors to invest in the TSAI Platform, they would receive additional dividends:

> Invite new people to join and motivate team revenue and salary[.] By inviting new users to join the team, you will receive a corresponding dividend income when they rent an intelligent AI trading robot. Specifically, you can get revenue from the team: A members (5%) [directly recruited], B members (3%) [indirectly recruited], C members (2%) [indirectly recruited]. As team members rent AI trading robots, your team's total value will continue to increase. Once the team value reaches the set criteria, you will have the opportunity to be promoted to S1 or higher and receive additional performance bonuses to further increase your monthly income.

61. Investors were awarded a "level" ranging from S0 to S7, depending on the number of people they recruited and the total amount they and their recruits invested in the Program.

62. Defendants also represented that investors who became group leaders at the S1 level or above received reduced bot rental fees and were promised a monthly "salary" for three years.

63. For example, on or near March 20, 2025, in a WhatsApp group chat, a TSAI

Administrator posted an image announcing:

> For the top 100 excellent s7-level managers, TSAI will give a certain stock dividend, become a partner of TSAI, and participate in the annual profit dividend. At the same time, for the other top 300 s7-level managers, TSAI will increase their salary from $50,000 to $100,000. For other members below s7, if they also perform well, TSAI will … give promotions and salary increases!

**2. Defendants Incentivized Investors to Reinvest Their Funds on the TSAI Platform and to Send New Funds to the TSAI Platform**

64. Investors who received purported returns or payments from the AI Trading Bot Program—whether from the promised trading profits or from commissions or salaries from recruiting other investors—were given the option to transfer any of those funds to the TSAI Platform's "Profit Box."

65. The TSAI Website described the Profit Box as generating returns for investors by using a "short-term high-frequency quantitative trading strategy . . . [which] automatically starts . . . after receiving the user's funds," promising a minimum return of 0.35% per 24 hours.

**3. Defendants Concocted False Reasons to Prevent Investors from Withdrawing Their Funds**

66. Investors were required to submit a request to TSAI to withdraw funds reflected in their accounts on the TSAI Platform.

67. Defendants prevented those withdrawals by providing various excuses. For example, in a WhatsApp chat through a TSAI "human resources" employee, Defendants told investors that they were not permitted to withdraw their funds under "suspicion of illegal arbitrage" or because the investors were "withdrawing too much money."

68. At times, Defendants required additional payments from investors, which they called "verification payments," due to alleged hacking of the website. For example, in a February 10, 2025, WhatsApp chat, a purported "TSAI human resources employee" who worked

for Defendants, told an investor who was complaining about issues withdrawing funds from the Platform, “according to the system monitoring you and your team members have the same withdrawal IP and withdrawal address and the same withdrawal time. There is a suspicion of illegal arbitrage. Your IP and withdrawal account have been temporarily blocked[.]”

69. The purported human resources employee then told the investor that she would need to re-deposit any prior funds withdrawn:

> I can understand how you feel right now, but according to TSAI you have now violated the appropriate rules and illegal profits have been detected, so there will be withdrawal failures…. You need to redeposit the funds withdrawn in the past month, using the new deposit address, into your account. And re-withdraw using the new withdrawal address. You will need to have your team members also need to use the new address for funds withdrawn in the past month. Deposit into their TSAI account and re-withdraw using the new deposit address[.]

70. Other investors were told that they had to pay “taxes” to TSAI in order to withdraw their profits, which required investors to send new funds to the Platform. For example, in mid-March 2025, a TSAI Administrator told one investor via WhatsApp: “you have $5250 in your account, $5000 in robo-frozen funds and $250 in asset center funds. According to TSAI you need to pay 25% tax. The exact amount of tax you need to pay is $1312.5.” The TSAI Administrator followed up and told the investor, “[i]f taxes are not paid by March 15th [2025], TSAI will temporarily close your account.”

71. Similarly, during the week of March 17, 2025, a pop-up appeared on the TSAI Website’s landing page requiring all investors to make a “verification” payment of $280-$12,000 to access their accounts, under the guise that the TSAI Platform was hacked.

### E. In March 2025, the TSAI Platform Went Dark and The AI Trading Bot Program Ended

72. By March 23, 2025, the TSAI Website no longer functioned. Instead, it displayed a perpetual message that “This Website is under maintenance.”

73. Investors could thus not access funds reflected in their accounts on the TSAI Platform and could not access their other promised payments, such as commissions and salaries.

**F. Defendants Misappropriated Investor Funds Through Various Blockchain Addresses**

74. A total of at least approximately $2.8 million in deposited funds, consisting of crypto assets, were misappropriated by the Defendants from approximately 1,715 retail investors.

75. Approximately $2.7 million of the deposited funds were on the Bitcoin blockchain. The remaining assets that were deposited were on the Ethereum blockchain.

76. While retail investors were given unique crypto wallet addresses for the initial investment of crypto assets in the Program, their assets were later pooled with assets from other TSAI investors in the Program in consolidation wallets.

77. Defendants have subsequently removed those investor funds from the consolidation wallets.

78. Crypto wallet addresses that directly or indirectly received ill-gotten gains as part of this fraudulent scheme include the following:

| **Blockchain** | **Address** |
|---|---|
| Bitcoin | 1AsFRTHAw6DenKT1fUfy988R8mzU4AfS55 |
| Bitcoin | 1JKGf3TotEwTTrmT6Sn5dTDwraeBXPSvaw |
| Ethereum | 0x217adc01CA7e98Bbf7732A2fb2FBa9682990A287 |
| Ethereum | 0xE4983f9374B4fa395AF149cC0e0C098700909425 |

**G. Defendants Offered and Sold the AI Trading Bot Program as an Investment Contract, and thus, as a Security**

79. Investors made investments of money in the AI Trading Bot Program in the form of crypto asset BTC on the Bitcoin blockchain and in the form of the crypto assets ETH, USDT,

and USDC on the Ethereum blockchain.

80. Investor funds in the AI Trading Bot Program were pooled. As alleged above, all investor deposits were funneled to two addresses, one on the Bitcoin blockchain and one on the Ethereum blockchain.

81. Investors' interests were aligned because they were dependent, as a group, on the perpetuation of the TSAI Platform, generally, and the AI Trading Bot Program, specifically. In addition, the rental fee for a particular bot was the same for all investors and the purported returns that bot supposedly generated were identical and governed by the same purported AI. Similarly, all investors in the AI Trading Bot Program were dependent, as a group, on the perpetuation of the Program.

82. Investors had a reasonable expectation of profits based on Defendants' represented ongoing managerial and entrepreneurial efforts. These efforts, according to Defendants, included: (a) developing, monitoring, adjusting, and updating the trading bots that investors were promised would generate guaranteed returns; and (b) coding, launching, publicizing, and troubleshooting Defendants' online infrastructure, including the TSAI Website and the TSAI Platform.

83. Based on these representations of Defendants' purported efforts, investors in the AI Bot Trading Program reasonably believed that management of the TSAI entities was responsible for the perpetuation of the TSAI Platform, the AI Bot Trading Program, and the performance of investors' investments in the Program.

84. In addition, by encouraging the recruitment of others through the pyramid scheme, as alleged above, Defendants created an expectation that investors would earn profits from Defendants' efforts in creating, perpetuating, and updating the TSAI Platform and the AI

Bot Trading Program, and investors' efforts in recruiting others to join.

**H. Defendants Engaged in a Scheme to Defraud**

85. Defendants engaged in a scheme to defraud investors by creating and perpetuating a deceptive course of business by, among other things: (a) creating the false appearance that the AI Trading Bot Program executed profitable trades to earn investors guaranteed profits using proprietary AI bots; (b) incorporating fictitious entities; (c) filing a Form D containing false information; (d) posting a fake "SEC Certificate" on the TSAI Website referencing that falsified Form D; (e) hyping a nonexistent platform on that website, public Facebook posts, and WhatsApp chat groups; and (f) displaying nonexistent profits in investor accounts through the TSAI Website.

86. The purpose of this deception was for Defendants to misappropriate millions of dollars from investors, which they did successfully.

**I. Defendants Made Materially False and Misleading Statements**

87. Defendants obtained at least $2.8 million in investor money through affirmatively false and misleading statements regarding the AI Trading Bot Program that they made on the TSAI Website, in WhatsApp chats, and in social media.

88. These false statements included:

(a) Claiming that investor money would be used to rent AI trading bots which would make trades to generate guaranteed returns for investors.

(b) Claiming that the TSAI entities were "fully regulated" by the SEC.

(c) Claiming on the TSAI Website that Defendants—and by extension, the TSAI Platform—was "legal and safe."

(d) A filed Form D containing false information, including inaccurate information relating to individuals and addresses.

(e) Claiming that investor accounts were locked due to "suspicion of illegal arbitrage" and other fictitious reasons that investors were not permitted to withdraw their money. In reality, Defendants had simply misappropriated investor funds.

89. Defendants' false statements were material to investors' decisions to invest in the AI Trading Bot Program. Their statements were designed to induce investors to invest in the AI Trading Bot Program and to recruit others to invest in the AI Trading Bot Program and the TSAI Platform.

### J. Defendants' Fraudulent Scheme and Materially False and Misleading Statements Were In Connection With the Purchase or Sale of a Security

90. Defendants' scheme and materially false and misleading statements were in connection with the purchase or sale of securities.

91. As alleged above, Defendants offered and sold their AI Trading Bot Program as an investment contract.

92. In addition, as alleged above, Defendants falsely represented to investors that the AI trading bots would engage in "stock trading."

93. The misrepresentations and fraudulent scheme described above were designed to convince, and succeeded in convincing, investors to deposit funds on the TSAI Platform for the purpose of investing in the AI Trading Bot Program, which Defendants then misappropriated.

### K. Defendants Acted With Scienter

94. Defendants acted with scienter because persons controlling and/or representing the Defendants, including the Administrators, made numerous statements that they knew or were reckless in not knowing were false, including statements on Defendants' website, in WhatsApp group chats, on public Facebook posts, and in a filing submitted to the SEC.

95. Defendants knew, or were reckless in not knowing that there was no AI Trading

Bot Program or AI trading bots, that neither TSAI nor the AI Trading Bot Program was regulated by the SEC, that the incoming funds from investors would not be deployed to earn the promised returns, and that TSAI Pro's Form D was filed with false information and was filed with the purpose of providing TSAI and the AI Trading Bot Platform with the appearance of legitimacy, as was the fake "SEC certificate" appearing on the TSAI Website.

96. Defendants also knew, or were reckless in not knowing, that there was no actual trading on the TSAI Platform, the profits appearing in investor accounts were non-existent, and the reasons given to investors to make it difficult or impossible for them to withdraw funds from their TSAI Platform accounts were false.

**FIRST CLAIM FOR RELIEF**
**Sale of Unregistered Securities**
**Violations of Sections 5(a) and 5(c) of the Securities Act**
**[15 U.S.C. § 77e(a) and 77e(c)]**

97. The SEC realleges and incorporates by reference in this claim for relief each and every allegation in paragraphs 1 through 96, as if they were fully set forth herein.

98. The AI Trading Bot Program offered and sold by Defendants was a security under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 77c(a)(10)].

99. Defendants' offer and sale of securities were not registered with the SEC and the securities were offered and sold through interstate commerce. There was no registration statement in effect or filed with the SEC with respect to the offering.

100. No exemption applied to offer of the AI Trading Bot Program. Defendants engaged in a general solicitation, including by creating and maintaining the TSAI Website and the TSAI Platform, which served as the investment portal to the AI Trading Bot Program; creating and distributing marketing and promotional materials for the Program, and encouraging

the recruitment of others to invest in the Program. In addition, Defendants failed to take reasonable steps to verify whether investors qualified as accredited investors.

101. The TSAI AI Trading Bot Program was sold to investors residing outside of New York and throughout the United States.

102. By engaging in the conduct described above, Defendants directly or indirectly violated, and unless restrained and enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

**SECOND CLAIM FOR RELIEF**
**Fraud in Connection with the Purchase or Sale of Securities**
**Violations of Exchange Act Section 10(b) and Rule 10b-5(b) Thereunder**
**[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b)]**

103. The SEC realleges and incorporates by reference each and every allegation in paragraphs 1 through 96, as if they were fully set forth herein.

104. Defendants made false and misleading statements through the TSAI Website, the TSAI Platform, and TSAI Administrators through various social media platforms, including by falsely claiming that investor money would be used to rent AI trading bots which would make trades in crypto, stock, or other assets to generate guaranteed returns for investors, by representing in social media that TSAI was "fully regulated' by the SEC, by filing a Form D with false information to reinforce the appearance of legitimacy, and by claiming accounts were locked due to "suspicion of illegal arbitrage," or for withdrawing "too much" money, and that various payments and "taxes" were required for investors to withdraw their money.

105. By engaging in the conduct described above, Defendants knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by use of the means or instrumentalities of interstate commerce or of the mails or of any facility of a national securities exchange: made untrue statements of material fact, or omitted to state material facts necessary in

order to make the statements made, in light of the circumstances under which they were made, not misleading.

106. By engaging in the foregoing conduct, Defendants violated, and unless restrained and enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

**THIRD CLAIM FOR RELIEF**
**Fraud in the Offer or Sale of Securities**
**Violations of Section 17(a)(2) of the Securities Act**
**[15 U.S.C. § 77q(a)(2)]**

107. The SEC realleges and incorporates by reference each and every allegation in paragraphs 1 through 96, as if they were fully set forth herein.

108. Defendants made false and misleading statements through the TSAI Website, the TSAI Platform, and TSAI Administrators through various social media platforms, including by falsely claiming that investor money would be used to rent AI trading bots that would make trades in crypto, stock, or other assets to generate guaranteed returns for investors, by representing in social media that TSAI was “fully regulated’ by the SEC, by filing a Form D with false information to reinforce the appearance of legitimacy, and by claiming accounts were locked due to “suspicion of illegal arbitrage,” or for withdrawing “too much” money, and that various payments and “taxes” were required for investors to withdraw their money.

109. As a result of these false statements, Defendants obtained over $2.8 million in investor funds.

110. By engaging in the conduct described above, Defendants, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, knowingly, recklessly, or negligently: obtained money or property by means of untrue statements of a material fact or by

omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

111. By engaging in the conduct described above, Defendants have violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

**FOURTH CLAIM FOR RELIEF**
**Fraud in Connection with the Purchase or Sale of Securities**
**Violations of Exchange Act Section 10(b) and Rules 10b-5(a) and 10b-5(c) Thereunder**
**[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(a) and (c)]**

112. The SEC realleges and incorporates by reference each and every allegation in paragraphs 1 through 96, as if they were fully set forth herein.

113. Defendants engaged in a scheme to defraud investors by engaging in a deceptive course of business by: (a) creating the false appearance that the AI Trading Bot Program executed profitable trades to earn investors guaranteed profits using proprietary AI bots, (b) inducing investors to invest in the Program by disseminating false and misleading statements of material fact on their website and other media concerning the features, viability, and risks of their investments, (c) incorporating fictitious entities, (d) creating the false appearance of oversight by the SEC by filing a Form D with false information, and (e) creating a fake SEC certificate and subsequently posting it on the TSAI Website.

114. By engaging in the conduct described above, Defendants, directly or indirectly, in connection with the purchase or sale of a security, and by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, knowingly or recklessly: (a) employed devices, schemes, or artifices to defraud; and (b) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

115. By engaging in the conduct described above, Defendants have violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

**FIFTH CLAIM FOR RELIEF**
**Fraud in the Offer or Sale of Securities**
**Violations of Sections 17(a)(1) and 17(a)(3) of the Securities Act**
**[15 U.S.C. § 77q(a)(1) and 77q(a)(3)]**

116. The SEC realleges and incorporates by reference each and every allegation in paragraphs 1 through 96, as if they were fully set forth herein.

117. Defendants engaged in a scheme to defraud investors by (a) creating the false appearance that the AI Trading Bot Program executed profitable trades to earn investors guaranteed profits using proprietary AI bots, (b) inducing investors to invest in the Program by disseminating false and misleading statements of material fact on their website and other media concerning the features, viability, and risks of their investments, (c) incorporating fictitious entities, (d) creating the false appearance of oversight by the SEC by filing a Form D with false information and (e) creating a fake "SEC certificate" and subsequently posting it on the TSAI Website.

118. By engaging in the conduct described above, Defendants, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, acting knowingly or recklessly, employed devices, schemes, or artifices to defraud; and, acting knowingly, recklessly or negligently, engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

119. By engaging in the conduct described above, Defendants have violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(1) and 17(a)(3) of the

Securities Act [15 U.S.C. §§ 77q(a)(1) and 77q(a)(3)].

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court enter a Final Judgment:

### I.

Issuing findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Permanently enjoining TSAI Pro and TSAI Capital, and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them from violating Securities Act Sections 5(a), 5(c), and 17(a) [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### III.

Permanently enjoining TSAI Pro and TSAI Capital, and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, pursuant to Securities Act Section 20(b) [15 U.S.C. § 77t(b)] and Exchange Act Sections 21(d)(1) and (d)(5) [15 U.S.C. §§ 78u(d)(1) and 78(d)(5)], from directly or indirectly, including, but not limited to, through any entity owned or controlled by such Defendant, participating in the issuance, purchase, offer, or sale of any security.

### IV.

Ordering Defendants to disgorge all ill-gotten gains from their violations alleged in this Complaint, and order them to pay prejudgment interest on their ill-gotten gains under Sections 21(d)(3), (d)(5) and (d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)].

**V.**

Ordering Defendants to pay civil monetary penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

**VI.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**VII.**

Ordering any other relief this Court may deem just and proper.

**JURY DEMAND**

The SEC demands a trial by jury on liability.

Respectfully submitted,

Dated: Los Angeles, California
September 29, 2026

*<u>/s/ Ruth C. Pinkel</u>*
Ruth C. Pinkel
*Pro hac vice application pending*

SECURITIES AND EXCHANGE COMMISSION
Los Angeles Regional Office
444 South Flower Street, Ste. 900
Los Angeles, CA 90071
Telephone: (323) 965-3322
pinkelr@sec.gov

*Attorneys for Plaintiff*